1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10  ARTHUR CARDOZA,                    )   Case No. CV 06-418-PJW
                                       )
11                    Plaintiff,       )
                                       )   MEMORANDUM OPINION AND ORDER
12             v.                      )
                                       )
13  JO ANNE B. BARNHART,               )
    Commissioner of Social Security    )
14  Administration,                    )
                                       )
15                    Defendant.       )
    _____)
16

17                              I.

18                         INTRODUCTION

19       Plaintiff Arthur Cardoza brings this action seeking reversal of

20  the decision of Defendant Social Security Administration ("the

21  Agency"), denying his claim for Supplemental Security Income ("SSI")

22  benefits.  Alternatively, he asks the Court to remand the case to the

23  Agency for further proceedings.  For the following reasons, the Court

24  concludes that the Agency erred and remand is required.

25
26
27
28

II.

STATEMENT OF FACTS

Plaintiff was born on November 6, 1954, and was 51 years old at the time of the administrative hearing.  (Administrative Record ("AR") 52, 135.)  He completed one year of college and can communicate in English.  (AR 66, 134-43.)  He has no past relevant work.  (AR 142-43.)

Plaintiff applied for SSI on April 30, 2004, alleging disability since November 20, 2002.  (AR 52-55.)  In a report he submitted to the Agency, Plaintiff stated that torn cartilage in his right knee limited his ability to work.  (AR 62.)  After the Agency denied Plaintiff's claim, he timely requested a hearing before an administrative law judge ("ALJ").  (AR 22-23, 29, 34.)

The ALJ held a hearing on November 7, 2005.  (AR 126-53.) Plaintiff appeared without counsel and testified.  (AR 128.) Plaintiff's testimony centered around his right knee injury.  He testified that he could only walk for short distances without a cane, and that he could not sit for longer than 15 minutes before standing because of pain in his right leg.  (AR 139-43.)  He also complained that he could not stand for more than 10 minutes because any weight on his right leg caused pain.  (AR 141-42.)  Plaintiff explained that he needed surgery on his knee but that he had had difficulty getting an appointment to see a doctor for surgery.  (AR 135, 138.)  Plaintiff stated, however, that he had arranged for surgery, which would take place after the hearing.  (AR 137-38.)

The ALJ also heard testimony from a vocational expert.  The ALJ posed the following hypothetical question to her:

2

1   [A]ssume that you're dealing with an individual of the same

2   age, education and work experience as the [Plaintiff], and

3   further assume this person retains the residual functional

4   capacity for a limited range of light exertional work as

5   follows: Now, this person is able to lift 20 pounds

6   occasionally, 10 pounds frequently but must use a cane.

7   This person is able to stand and/or walk a total of two

8   hours in an eight-hour day, but if the person uses a cane,

9   is able to do that increased set to four hours.  The person

10  is able to sit six hours in an eight-hour day.  . . .  In

11  terms of climbing ramps and stairs, this person will

12  occasionally climb ramps and stairs, but was to use a cane,

13  a banister, and a stoop.  This person is not able to climb

14  ladders, scaffolds, and ropes.  This person is able to

15  occasionally balance, stoop, crouch, kneel, squat.  This

16  person is not able to crawl, not able to walk on uneven

17  terrain, and must use a cane to walk distances longer than

18  say across the room.  This person should avoid even moderate

19  exposure to vibration.

20  (AR 147-48.)  The vocational expert opined that this hypothetical

21  person could perform work as an electronics worker, a hand packer, and

22  bench assembler, where the exertion is light and the Specific

23  Vocational Preparation ("SVP") is two.[1]  (AR 148-49.)

24

25      [1]  "SVP" stands for "Specific Vocational Preparation" and is
26  defined as "the amount of lapsed time required by a typical worker to
    learn the techniques, acquire the information, and develop the
27  facility needed for average performance in a specific job-worker
    situation."  Dictionary of Occupational Titles, Appendix C.  An SVP of
28  2 applies to training that is beyond a short demonstration and up to

1    On January 10, 2006, the ALJ issued a decision, analyzing
2    Plaintiff's claim under the Agency's five-step sequential evaluation
3    process. (AR 13-19.)  At step one, he found that Plaintiff had not
4    engaged in substantial gainful activity since November 20, 2002. (AR
5    15.)  At steps two and three, he concluded that Plaintiff's right knee
6    disorder was a severe impairment, but that it did not meet or equal a
7    Listing. (AR 15.)

8    The ALJ determined at step four that Plaintiff had no past
9    relevant work experience. (AR 17.)  At step five, the ALJ found that
10   Plaintiff could perform work as an electronics worker, bench
11   assembler, and hand packer and, therefore, was not disabled. (AR 17-
12   18.)

13   Plaintiff timely requested review of the ALJ's decision. (AR 7.)
14   The Appeals Council denied review on March 23, 2006, and the ALJ's
15   decision became the final decision of the Agency. (AR 4.)  Plaintiff
16   then filed a Complaint in this Court.

17                                III.

18                        STANDARD OF REVIEW

19   "Disability" under the applicable statute is defined as the
20   inability to perform any substantial gainful activity because of "any
21   medically determinable physical or mental impairment which can be
22   expected to result in death or which has lasted or can be expected to
23   last for a continuous period of not less than twelve months." 42
24   U.S.C. § 1382c(a)(3)(A).  The Court may overturn the ALJ's decision
25   that a claimant is not disabled only if the decision is not supported

26

27   _____

28   and including one month of training. *Id.*

                                  4

1    by substantial evidence or is based on legal error.  *See Magallanes v.*
2    *Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).

3        Substantial evidence "'means such relevant evidence as a
4    reasonable mind might accept as adequate to support a conclusion.'"
5    *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(quoting *Consol. Edison*
6    *Co. v. NLRB*, 305 U.S. 197, 229 (1938).)  It is "more than a mere
7    scintilla but less than a preponderance," *Tidwell v. Apfel*, 161 F.3d
8    599, 601 (9th Cir. 1998), and "does not mean a large or considerable
9    amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

10       The Court must uphold the ALJ's conclusion even if "the evidence
11   [in the record] is susceptible to more than one rational
12   interpretation." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595,
13   599 (9th Cir. 1999).  Indeed, if the record evidence reasonably can
14   support either affirming or reversing the Agency's decision, this
15   Court must not substitute its judgment for that of the ALJ.  *See*
16   *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the ALJ
17   committed error but the error was harmless, reversal is not required.
18   *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th
19   Cir. 2003)(applying the harmless error standard).

20                                 IV.

21                              DISCUSSION

22       Plaintiff argues that the ALJ erred in failing to: (1) properly
23   consider the opinion of the consultative examiner prior to finding
24   that Plaintiff's knee impairment did not meet or equal Listing 1.02A;
25   (2) consider the opinion of the treating physician; (3) consider lay
26   witness testimony; and (4) develop the record. (Joint Stipulation,
27   "JS," at 2-3.)  For the following reasons, the Court finds that the

28

                                   5

ALJ failed to properly consider whether Plaintiff's condition equals Listing 1.02A and remand is required for further consideration.

A.   <u>The ALJ's Finding That Plaintiff Did Not Meet Listing 1.02A Is Supported By The Evidence, But His Finding That Plaintiff Did Not Equal The Listing Is Not</u>

Plaintiff contends that the ALJ's finding that his knee impairment did not meet or equal Listing 1.02A was flawed because the ALJ failed to consider the opinion of consulting orthopedic specialist Dr. Lawrence Meltzer that Plaintiff should not walk on uneven or irregular terrain. (JS at 3-5.) According to Plaintiff, the ALJ ignored this part of the doctor's opinion, and misconstrued the requirements for meeting Listing 1.02A, which "make clear" that an inability to walk on uneven or irregular terrain constitutes an inability to ambulate effectively.

It is clear from the ALJ's decision that he did consider Dr. Meltzer's opinion. The ALJ included a limitation of not walking on uneven terrain both in his hypothetical question to the vocational expert and in his ultimate determination of Plaintiff's residual functional capacity. (AR 16, 148.) In the hypothetical, the ALJ told the vocational expert to assume that the hypothetical person is "not able to walk on uneven terrain . . . ." (AR 148.) Likewise, in his decision, the ALJ concluded that Plaintiff was "unable to walk on uneven terrain." (AR 16.) Plaintiff's unsupported assertions to the contrary are rejected.

Next Plaintiff contends that the ALJ's interpretation of Listing 1.02A was erroneous. Listing 1.02A, covering major dysfunction of a joint, provides as follows:

1    Characterized by gross anatomical deformity (e.g.,

2    subluxation, contracture, bony or fibrous ankylosis,

3    instability) and chronic joint pain and stiffness with signs

4    of limitation of motion or other abnormal motion of the

5    affected joint(s), and findings on appropriate medically

6    acceptable imaging of joint space narrowing, bony

7    destruction, or ankylosis of the affected joint(s).  With:

8    A.    Involvement of one major peripheral weight-bearing

9          joint (i.e., hip, knee, or ankle), resulting in

10         inability to ambulate effectively, as defined in

11         1.00B2b.

12   20 C.F.R. Pt. 404, Subpt. P, App. 1, 1.02A.

13   The inability to ambulate effectively is defined in § 1.00B2b as:

14   [A]n extreme limitation of the ability to walk; i.e., an

15   impairment(s) that interferes very seriously with the

16   individual's ability to independently initiate, sustain, or

17   complete activities.  Ineffective ambulation is defined

18   generally as having insufficient lower extremity functioning

19   to permit independent ambulation without the use of a hand-

20   held assistive device(s) that limits the functioning of both

21   upper extremities.

22   20 C.F.R. Pt. 404, Subpt. P, App. 1, 1.00B2b(1).

23   The regulation then provides "examples of ineffective

24   ambulation," which "include, but are not limited to, the inability to

25   walk without the use of a walker, two crutches or two canes, the

26   inability to walk a block at a reasonable pace on rough or uneven

27   surfaces. . . ."  20 C.F.R. Pt. 404, Subpt. P, App. 1, 1.00B2b(2).

28

7

1    At step three of the sequential evaluation process, the ALJ
2    found:

3        [Plaintiff's] impairment does not preclude his ability to
4        ambulate effectively.  While the undersigned finds the
5        claimant does require the use of a cane to ambulate, section
6        1.00B2b requires the use of a hand-held assistive device
7        that limits the function of both upper extremities.  The
8        undersigned finds the claimant is not limited in the
9        functioning of **both** upper extremities.  Accordingly,
10       [Plaintiff's] impairment does not meet or medically equal
11       the listed impairment in the Act.

12   ((AR 16)(emphasis in original).)

13   Plaintiff first argues that the "inability to walk without the
14   use of a walker, two crutches or two canes is **an example** of
15   ineffective ambulation," not a conclusive requirement.  (JS at 4
16   (emphasis in original).)  Plaintiff offers no authority to support
17   this interpretation, which is contrary to the plain language of the
18   regulation.  Furthermore, at least two courts have agreed with the
19   ALJ's interpretation of this provision, i.e., that a claimant must
20   require use of both arms to meet the Listing.  *See Mazza v. Barnhart*,
21   2006 WL 4045936, at *7 (D. Kan. Oct. 25, 2006)(holding that the
22   claimant's use of *one* cane did not meet regulatory definition of
23   inability to ambulate effectively under Listing 1.02A); *Buckley v.*
24   *Comm'r of Social Security*, 2005 WL 2318235, at *5 (E.D. Mich. Sept.
25   22, 2005)(noting that 1.00B2b "requires that a claimant demonstrate
26   the need for a hand-held assistive device that requires the use of
27   *both* hands")(emphasis in original).  This Court agrees with the
28   reasoning and the conclusion reached in these two cases.  A plain

8

1   reading of the applicable sections makes clear that to fall within the
2   ambit of the Listing a claimant must establish that he needs both arms
3   to get around.   One is not enough.   The ALJ's conclusion that
4   Plaintiff did not meet the Listing because he needed only one arm to
5   assist in walking is supported by the law and the facts and will not
6   be disturbed.

7       Plaintiff also contends that the ALJ failed to properly analyze
8   whether Plaintiff equaled the Listing.   He points out that he is
9   unable to walk a block at a reasonable pace on rough or uneven
10  surfaces and claims that the ALJ never addressed this fact in relation
11  to Plaintiff meeting Listing 1.02A.   Here, the Court agrees with
12  Plaintiff.

13      There is no dispute that Plaintiff cannot walk on uneven terrain.
14  (AR 16.)   And there is no dispute that an inability to walk on uneven
15  terrain falls within the definition of an inability to ambulate under
16  § 1.00B2b.   Thus, Plaintiff's argument that his condition equals
17  Listing 1.02A because he cannot walk on uneven surfaces and uses a
18  cane is a plausible one that should have been addressed by the ALJ.
19  The ALJ simply failed to give any reason why Plaintiff did not equal
20  the Listing.   The only explanation the Court can glean from the ALJ's
21  decision is that Plaintiff's condition did not equal the Listing
22  because it did not meet the Listing.   But that is not the test.   On
23  remand, the ALJ should explain why Plaintiff's inability to ambulate
24  effectively (i.e., he can not walk a block at a reasonable pace on

25

26

27

28

1  rough or uneven surfaces), combined with the fact that he requires the

2  use of one arm to walk, is not enough to equal Listing 1.02A.[2]

3  B.  The ALJ Properly Addressed The Treating Physician's Opinion

4      Plaintiff complains that the ALJ failed to properly discuss the

5  opinion of his treating physician, Dr. Niven Raval.  (JS at 8-9, 12.)

6  According to Plaintiff, the ALJ was required to discuss the factors

7  set forth in 20 C.F.R. § 404.1527(d) ("How we weigh medical opinions")

8  when evaluating Dr. Raval's opinion and to afford that opinion

9  deference.  (JS at 9.)  For the following reasons, this claim is

10 rejected.

11     It is well-established that, "[b]y rule, the Social Security

12 Administration favors the opinion of a treating physician over non-

13 treating physicians." *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir.

14 2007); *see also Aukland v. Massanari*, 257 F.3d 1033, 1037 (9th Cir.

15 2001); and *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996).  A

16 treating physician's opinion as to the nature and severity of an

17 impairment must be given controlling weight if the opinion is well

18 supported and not inconsistent with other substantial evidence.  SSR

19 96-2p; *Edlund v. Massanari*, 253 F.3d 1152, 1157 (9th Cir. 2001).

20     Plaintiff visited Dr. Raval, an orthopedist, five times between

21 February 5, 2003, and September 11, 2003.  (AR 119-124.)  The medical

22 records from these visits are sparse, consisting of brief notes by the

23 doctor about Plaintiff's complaints.  (AR 119-124.)  The doctor also

24 noted throughout that Plaintiff was having trouble obtaining general

25

26     [2]  Though Dr. Brodsky concluded that Plaintiff did not equal

27 Listing 1.02A, he did not explain the basis for his opinion.  (AR
   103.)  Nor did the ALJ cite the opinion as a basis for finding that

28 Plaintiff did not equal the Listing.  (AR 16.)

10

relief and needed a statement of disability from Dr. Raval to process his claim.  (AR 119-124.)  Each time, it seems, Dr. Raval agreed to provide Plaintiff with a note stating that Plaintiff was temporarily disabled due to his knee injury.  (AR 119-124.)  Plaintiff also visited Dr. Raval in January 2005, after his application for benefits was denied initially and on reconsideration.  (AR 29-33, 118.)  This time, too, Dr. Raval agreed to provide Plaintiff with a note stating that he was temporarily unable to work.  (AR 118.)

The ALJ dismissed these temporary disability statements because he found that they were "only for the purpose of temporary disability and [were not] consistent with the medical evidence presented in the record."  (AR 17.)  Plaintiff complains that this was tantamount to rejecting Dr. Raval's opinion of disability and that the ALJ erred in doing so.  The Court disagrees.  A close look at the record demonstrates that the ALJ's finding that Plaintiff could perform light work was not inconsistent with Dr. Raval's opinion.

In his treatment notes, Dr. Raval made consistent objective findings that Plaintiff's right knee had no gross erythema, no medial joint line tenderness, and no gross joint laxity.  (AR 118-25.)  Dr. Raval also noted a meniscal tear in Plaintiff's right knee.  (AR 118-23, 125.)  At Plaintiff's request, Dr. Raval filled out a form and wrote several notes regarding Plaintiff's inability to perform his regular line of work in construction and home repair.  (AR 118-20, 122, 124-25.)

The record shows that Dr. Meltzer, the orthopedic specialist, made similar findings.  Dr. Meltzer found that Plaintiff's right knee was unstable, with no erythema, smooth range of joint motion, chondromalacia of the patella, and a torn medial meniscus.  (AR 97-

11

1  98.)  He, like Dr. Raval, opined that Plaintiff was unable to perform
2  work in construction and home repair.  (AR 98.)

3       Thu N. Do, a state agency physician, agreed with Dr. Meltzer's
4  assessment.  (AR 114.)  State agency physician Dr. Brodsky also agreed
5  and noted that Dr. Raval's conclusions about Plaintiff's limitation
6  were not significantly different from his own findings, i.e., that
7  Plaintiff could work.  (AR 103, 110.)

8       In short, the ALJ's finding that Plaintiff could work is not
9  inconsistent with Dr. Raval's opinion.  Though Dr. Raval filled out a
10  form certifying that Plaintiff was temporarily disabled from January
11  through June 2005, his notes make clear that what he meant by this was
12  that Plaintiff could not perform his regular line of work in home
13  repair and construction.  (AR 118-20, 125.)  The ALJ's finding in
14  January 2006 that Plaintiff could perform light work does not
15  contradict Dr. Raval's opinion that Plaintiff could not perform home
16  repair and construction work from January to June 2005.  (AR 16, 118-
17  20.)

18       Because the ALJ's findings were consistent with Dr. Raval's
19  opinion, the ALJ was not required to provide reasons for rejecting it.
20  *See Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999)(holding,
21  where "[t]he record demonstrates that the ALJ accepted [the treating
22  physician]'s opinion," the ALJ was not required to articulate "clear
23  and convincing reasons" for rejecting that opinion).  For this reason,
24  there is no merit to Plaintiff's claim that the ALJ improperly
25  rejected the treating physician's opinion.

26

27

28

1  C.   <u>The ALJ's Failure To Discuss An Agency Interviewer's Observations</u>

2       <u>Was Not Error</u>

3       T. Campbell, an Agency employee, interviewed Plaintiff and

4  reported that he had difficulty walking and standing.  (AR 60.)

5  Campbell noted that Plaintiff "walks with a cane and limps."  (AR 60.)

6  The ALJ failed to address Campbell's observations.  Plaintiff contends

7  that this was error.  (JS at 12-13.)  The Court disagrees.

8       "[L]ay witness testimony as to a claimant's symptoms or how an

9  impairment affects ability to work *is* competent evidence."  *Nguyen v.*

10 *Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996)(emphasis in original).  An

11 ALJ may reject lay testimony but must give reasons germane to a lay

12 witness's testimony before discounting it.  *Id.* at 1467.  A single

13 interview with Plaintiff, however, does not render the Agency employee

14 a competent lay witness.  *See Crane v. Shalala*, 76 F.3d 251, 253 (9th

15 Cir. 1995)(holding two-week counseling did not qualify therapist as

16 competent lay witness); *Smith v. Barnhart*, 2002 WL 485050, at *4 (N.D.

17 Cal. March 27, 2002)(finding that one visit by the Agency interviewer

18 did not qualify him as a competent lay witness).  Therefore, the ALJ

19 was not required to consider Campbell's observations.  *See Smith*, 2002

20 WL 485050, at *4 (explaining the ALJ may, but is not required to,

21 consider an agency interviewer's testimony).

22      Even if the ALJ erred by failing to mention Campbell's

23 observations, the error was harmless.  The state agency physicians and

24 the consulting orthopedic specialist made the same observations as

25 Campbell.  They recognized Plaintiff's difficulty in walking and

26 standing, noting that Plaintiff could only stand and/or walk for a

27 total of 2 hours in an 8-hour workday.  (AR 98, 105.)  The orthopedic

28 specialist commented on Plaintiff's use of a cane and his limp.  (AR

13

1    95.)  Thus, any failure to note that the Agency interviewer observed
2    the same symptoms as the doctors was not error.
3    D.    The ALJ Properly Developed The Record
4         Plaintiff complains that the ALJ did not properly develop the
5    record.  He argues that the ALJ should have inquired into Plaintiff's
6    daily activities and obtained current records from Dr. Grames, a
7    doctor that Plaintiff testified he saw before the administrative
8    hearing but whose records were not included in the medical record.
9    (AR 137; JS at 15-17, 19.)  Plaintiff's claim lacks merit.
10        An ALJ has a duty to develop the record.  *See Smolen v. Chater*,
11   80 F.3d 1273, 1288 (9th Cir. 1996).  This duty is heightened when the
12   claimant is unrepresented by counsel at the hearing.  As the circuit
13   has explained, "where the claimant is not represented, it is incumbent
14   upon the ALJ to scrupulously and conscientiously probe into, inquire
15   of, and explore for all the relevant facts."  *Higbee v. Sullivan*, 975
16   F.2d 558, 561 (9th Cir. 1992), quoting *Cox v. Califano*, 587 F.2d 988,
17   991 (9th Cir. 1991).  This duty, however, is triggered only when the
18   evidence is ambiguous, or when the ALJ finds the record inadequate to
19   allow for proper evaluation of the evidence.  *See Smolen*, 80 F.3d at
20   1288; *see also Armstrong v. Commissioner of Soc. Sec. Admin.*, 160 F.3d
21   587, 590 (9th Cir. 1998).  The ALJ may discharge this duty in several
22   ways, including subpoenaing the claimant's physicians, submitting
23   questions to the claimant's physicians, continuing the hearing, or
24   keeping the record open after the hearing to allow supplementation of
25   the record.  *See Tidwell*, 161 F.3d at 602; *see also Smolen*, 80 F.3d at
26   1288.  Even if the ALJ's development of the record was inadequate,
27   however, a claimant is not entitled to relief unless he can show
28   prejudice.  *See Vidal v. Harris*, 637 F.2d 710, 713 (9th Cir. 1981).

14

1   Plaintiff claims that the ALJ had a duty to ask him about his
2   daily activities. (JS at 15.)   It is not clear that such a duty
3   existed because there appears to be nothing about these activities
4   that was not clear in the record. *See Smolen*, 80 F.3d at 1288.   Even
5   assuming that the ALJ had a duty to probe further, however, Plaintiff
6   simply does not provide this Court with any explanation about what the
7   ALJ should have asked about and what that might have shown.   Absent
8   this explanation, Plaintiff cannot establish prejudice, which he is
9   required to do.   *See Vidal*, 637 F.2d at 713; *see also Hall v.*
10  *Secretary of Health, Educ. & Welfare*, 602 F.2d 1372, 1378 (9th Cir.
11  1979)(holding prejudice "is not demonstrated by merely speculative
12  eventualities.").   Moreover, assuming arguendo, that the ALJ had a
13  duty to inquire further, this duty was discharged when he gave
14  Plaintiff an opportunity to bring up information about his daily
15  activities at the hearing.   *See Hart v. Sullivan*, 824 F. Supp. 903,
16  907 (N.D. Cal. 1992)(finding ALJ met duty to develop record by giving
17  claimant "fair opportunity to bring forward any relevant evidence at
18  the hearing").

19  Plaintiff also contends that the ALJ erred by making his decision
20  without obtaining current records from Plaintiff's doctors. (JS 15,
21  19.)   During the hearing, the ALJ told Plaintiff that he would keep
22  the record open for Plaintiff to submit additional records. (AR 151.)
23  This was all the ALJ was required to do.   *See Tonapetyan v. Halter*,
24  242 F.3d 1144, 1150 (9th Cir. 2001)(holding, where ALJ has duty to
25  develop record, duty may be discharged in several ways, including
26  "keeping the record open after the hearing to allow supplementation of
27  the record").   Plaintiff cannot now blame the ALJ because Plaintiff
28  failed to submit additional records.   Further, Plaintiff does not

15

1   explain how the omission of the records prejudiced him, which is his

2   burden. *Vidal*, 637 F.2d at 713.

3        For these reasons, the Court concludes that the ALJ did not err

4   when he failed to inquire about Plaintiff's daily activities and

5   failed to obtain Dr. Grames's records.

6                                        V.

7                                   CONCLUSION

8        For the reasons set forth above, the Agency's decision is

9   reversed and the case is remanded for further proceedings consistent

10  with this Opinion.

11       IT IS SO ORDERED.

12       DATED:    October  24  , 2007.

13                                    _____
                                      PATRICK J. WALSH
14                                    UNITED STATES MAGISTRATE JUDGE

15

16

17

18

19

20

21

22

23

24

25

26

27

28  S:\PJW\Cases-Soc Sec\CARDOZA, A\Memo_Opinion.wpd

                                      16